UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAKE CAR CONNECTION, INC.,

    Plaintiff,

v.                                    Case No.:  2:25-cv-292-SPC-KCD

TRUIST BANK,

    Defendant.
_____/

## ORDER

Before the Court are Defendant Truist Bank's Motion to Dismiss (Doc. 9), Plaintiff Lake Car Connection, Inc.'s response (Doc. 10), and Defendant's reply (Doc. 23). For the below reasons, the Court grants the motion in part.

This case is about the results of a scam.[1] Defendant is a bank, and Plaintiff opened an account with Defendant. (Doc. 6 ¶ 8). During this process, Plaintiff's principal, Mark Graves, provided Defendant with an executed signature card. (*Id.* ¶ 9–11). Plaintiff expected Defendant to use the card to verify transactions for the account. (*Id.* ¶¶ 12–13).

In August 2024, Plaintiff used this account for a transaction. Plaintiff agreed to sell a 1969 Chevrolet Camaro to a non-party, James C. Webb, for

---

[1] The Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to" Plaintiff. *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009).

$105,000. (*Id.* ¶ 19). Plaintiff did not know Webb and required that he wire the $105,000 to his account with Defendant, rather than pay via check. (*Id.* ¶¶ 20–22). But Webb had other plans. Unbeknownst to Plaintiff, Webb visited one of Defendant's locations and deposited a fraudulent $105,000 check into Plaintiff's account, forging Graves' signature on the back of the check. (*Id.* ¶¶ 24–30). Defendant then showed the $105,000 deposit as a final or posted transaction and that the funds were immediately available for withdrawal. (*Id.* ¶ 40). Plaintiff, believing that Webb had wired the funds, released the Camaro to him. (*Id.* ¶ 42). Several days later, Plaintiff learned that Defendant no longer showed the transaction as posted or final or the funds as available. (*Id.* ¶¶ 43–45). Webb had successfully scammed Plaintiff and vanished. (*Id.* ¶ 48). Plaintiff now sues Defendant for negligence. (Doc. 6). Defendant moves to dismiss. (Doc. 9).

Defendant argues that Plaintiff has failed to allege a duty under Florida law. (*Id.* at 4–11). To state a negligence claim, a plaintiff must allege "a duty, breach of that duty, causation, and damages." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012). "The duty element of negligence is a threshold legal question; if no legal duty exists, then no action for negligence may lie." *Jenkins v. W.L. Roberts, Inc.*, 851 So. 2d 781, 783 (Fla. Dist. Ct. App. 2003). And "duties may arise from four general sources: (1) legislative enactments or administrative regulations; (2) judicial interpretations of such

2

enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of a case." *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227–28 (Fla. 2010).

Plaintiff alleges that Defendant owed it a duty to:

> a. Use the Card to verify Mr. Graves' signature when it received the Fake Check before it accepted the Fake Check for deposit;
>
> b. Alert Lake Car Connection that the $105,000.00 deposit was made with a check when Defendant Truist deposited the Fake Check;
>
> c. Provide Lake Car Connection with a digital copy of the Fake Check when it deposited the Fake Check into the Account;
>
> d. Alert or notify Lake Car Connection that the $105,000.00 deposit had been made by way of check when it deposited the Fake Check into the Account;
>
> e. Show on the Account that the $105,000.00 deposit had been made by way of a check when it deposited the Fake Check into the Account; and
>
> f. Not show the funds as being available or the transaction as posted in the Account until the funds had cleared.

(Doc. 6 ¶ 50). As alleged, Defendant did not owe Plaintiff these duties under Florida law.

To start, the Uniform Commercial Code ("UCC") displaces at least some of these duties. Article 4 of the UCC concerns bank deposits and collections. *See* Fla. Stat. § 674.101 *et seq.* "Florida has adopted the provisions of the Uniform Commercial Code by statute in chapters 671–680[.]" *Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So. 2d 194, 197 (Fla. 1989). And the

UCC provides the "exclusive means of determining the rights, duties and liabilities of the affected parties *in any situation covered by particular provisions*[.]" *Regions Bank v. Provident Bank, Inc.*, 345 F.3d 1267, 1274 (11th Cir. 2003) (quoting UCC § 4A–102 cmt.) (emphasis in original). That said, "a plaintiff is not necessarily precluded from bringing a claim *related* to provisions of the Code." *Anderson v. Branch Banking & Tr. Co.*, 119 F. Supp. 3d 1328, 1356 (S.D. Fla. 2015) (emphasis in original).

When interpreting the UCC, "Florida courts begin with the plain language of the UCC provision at issue." *VFS Leasing Co. v. Markel Ins.*, 120 F.4th 745, 750 (11th Cir. 2024). And "in the absence of any case law in Florida, where a Florida statute is patterned after a statute of another state, we may look to the judicial interpretation of the other state as persuasive authority in interpreting the Florida statute." *Id.* at 751 (cleaned up).

The UCC is problematic for Plaintiff's negligence claim because it provides that the account holder—not the bank—bears the risk of loss for a counterfeit check. The UCC states that "a bank is not liable for the insolvency, neglect, misconduct, mistake, or default of another bank or person[.]" Fla. Stat. § 674.202(3). Similarly, it provides that "[u]nless a contrary intent clearly appears and before the time that a settlement given by a collecting bank for an item is or becomes final, the bank, with respect to the item, is an agent or subagent of the owner of the item and any settlement given for the item is

4

provisional." Fla. Stat. § 674.201(1). These provisions show that the account holder bears the risk of loss for a counterfeit check. *See, e.g.*, *L. Offs. of Oliver Zhou v. Citibank N.A.*, No. 15 CIV. 5266 (ER), 2016 WL 2889060, at *5 (S.D.N.Y. May 17, 2016) ("A collecting bank acts as the agent of its customer, and until such time as the collecting bank receives final payment, the risk of loss continues in the customer, the owner of the item.").

Plaintiff's assertion that Defendant owed it a duty to verify the signature on the check improperly attempts to shift the risk of loss to Defendant and hold it liable for Webb's misconduct. Courts have routinely rejected similar claims as inconsistent with the UCC. *See, e.g.*, *Sarrouf L. LLP v. First Republic Bank*, 148 N.E.3d 1243, 1253 (Mass. App. Ct. 2020) ("[A]n obligation to detect the counterfeit nature of a check drawn on another bank . . . does not appear in the code[.]"); *Dixon, Laukitis, & Downing, P.C. v. Busey Bank*, 993 N.E.2d 580, 587 (Ill. App. Ct. 2013) ("[T]here is no duty under the common law . . . or the UCC to investigate the genuineness of the check or to inform DLD that is could be counterfeit."); *Simmons, Morris & Carroll, LLC v. Cap. One, N.A.*, 144 So. 3d 1207, 1219, *writ denied*, 152 So. 3d 886 (La. Ct. App. 2014) ("Though a harsh result, jurisprudence from other states has favored the bank over similar victims who fell prey to such scams."). Plaintiff does not provide any authority to the contrary.

The UCC also explicitly blesses Defendant's actions here—that is, making the funds available before later revoking the funds. On this point, it states:

> If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer[.]

Fla. Stat. § 674.2141(1). That's exactly what happened here. This provision defeats Plaintiff's assertion that Defendant owed it a duty to "[n]ot show the funds as being available or the transaction as posted in the Account until the funds had cleared." (Doc. 6 ¶ 50). *See, e.g., Perry v. Chase Auto Fin.*, No. 17-10017, 2018 WL 5995495, at *3 (E.D. Mich. Nov. 15, 2018) ("other jurisdictions have found that a depositor of a fraudulent check does not have a cause of action for negligent misrepresentation against a bank that mistakenly informs the depositor that the check has 'cleared'").

The remaining purported duties are unsupported by Florida law. Plaintiff alleges Defendant owed it a duty to provide notice that the deposit was made with a check, to show on the account that the deposit was made with a check, and to provide Plaintiff with a digital copy of the check when it was deposited. (Doc. 6 ¶ 50). In short, Plaintiff believes Defendant should have

6

notified it in several ways that it received a check, not a wire. But the source of this "nebulous" duty is unclear. *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1322 (M.D. Fla. 2015).

Plaintiff argues this duty falls under a bank's general duty to "exercise ordinary care." (Doc. 10 at 5 (citing Fla. Stat. § 674.103)). But Plaintiff does not acknowledge the UCC provision stating that "[a]ction or nonaction approved by [Article 4] . . . is the exercise of ordinary care." Fla. Stat. § 674.103(3). Nor does Plaintiff provide any authority requiring a bank to notify a customer that available funds came from a check, not a wire transfer. So it has failed to meet its burden on this point.[2] *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 948 n.7 (11th Cir. 2014) ("the burden is on [the plaintiff] to point to Florida law establishing the existence of a legal duty on . . . banks").

And, burdens aside, the caselaw disfavors Plaintiff. Generally, "[b]ank-customer relationships are ordinarily arms-length transactions which impose no duty on the bank to act for the benefit or protection of the customer or to disclose facts the customer could have discovered through reasonable

---

[2] A duty can also arise from "the general facts of a case." *Curd*, 39 So. 3d at 1227–28. This duty "arises because of a foreseeable zone of risk arising from the acts of the defendant." *Id.* at 1228. As alleged, Defendant did not label the deposit a check or provide Plaintiff with a digital copy of the check. (Doc. 6 ¶¶ 36–38). But, as alleged, this practice did not create a foreseeable zone of risk. Plaintiff does not allege that Defendant was aware of the agreement to pay by wire transfer, or even aware of the Camaro transaction at all. So Defendant had no reason to believe that the distinction between a check and wire transfer was of any consequence.

7

diligence." *Megaval Enters., Ltd. v. Bank of Am., N.A.*, No. 14-20909-CIV, 2014 WL 12609318, at *4 (S.D. Fla. Oct. 8, 2014). Plaintiff does not allege facts showing that it could not have discovered through reasonable diligence that payment was made by check. Indeed, it alleges Defendant ultimately provided a copy of the check after Plaintiff discovered the funds were no longer available. (Doc. 6 ¶ 46).

Plaintiff fails to identify a duty owed by Defendant. The UCC displaces at least some of the duties Plaintiff alleges. Plaintiff fails to provide support for the other duties it asserts, and such duties are not found in the caselaw. Nor do the facts, as alleged, support imposing these duties. Given the above, the Court has serious doubts that Plaintiff can plausibly plead a claim against Defendant. That said, the Court will grant it leave to amend now that it has the benefit of this ruling.[3]

---

[3] Defendant also argues that Plaintiff's claims are barred by the Commercial Bank Services Agreement ("CBSA") and the independent tort doctrine. (Doc. 9 at 11–15). But these arguments require the Court to review the CBSA, a document outside of the complaint. A "document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). Defendant relies on two opinions for the proposition that account opening documents (like the CBSA) are central to a plaintiff's claims. (Doc. 9 at 12 (citing *Kalpakchian v. Bank of Am. Corp.*, 832 F. App'x. 579 (11th Cir. 2020) and *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334 (11th Cir. 2010)). But these opinions do not discuss the centrality of such documents to a claim of only negligence, like here. *See Kalpakchian*, 832 Fed. App'x at 584 (finding that "because Kalpakchian admitted the deposit agreement was central to her breach of contract claim and did not dispute its authenticity, the district court properly considered it" and separately affirming the dismissal of her negligence claim because that claim was "based on the exact same conduct as her contract claim"); *SFM Holdings*, 600 F.3d at 1335 (finding account opening documents central to a plaintiff's "fiduciary duty and constructive fraud" claims). So Defendant has failed to meet its burden to show that the CBSA is central

Accordingly, it is

**ORDERED:**

(1) Defendant Truist Bank's Motion to Dismiss (Doc. 9) is **GRANTED.**

(2) The complaint (Doc. 6) is **DISMISSED without prejudice.**

(3) **On or before July 24, 2025**, Plaintiff must file an amended complaint consistent with this Order. **Failure to comply may result in dismissal of this action and closure without further notice.**

**DONE** and **ORDERED** in Fort Myers, Florida on July 10, 2025.



SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record

---

to Plaintiff's negligence claim. Defendant may renew this argument if Plaintiff elects to amend its complaint.